UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FRANCESCO R. SEBASTIANI, DMD, § § § § § § § § § | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 5:20-cv-01093-OLG |
| BEXAR COUNTY HOSPITAL DISTRICT, et.al., | |
| *Defendants*. | |

**DEFENDANT UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

At the close of Defendant's case-in-chief, Defendant UT Health SA is entitled to judgment as a matter of law for the following reasons:

(1) **Both Title IX Claims, because Title VII preempts a private cause of action for sex discrimination under Title IX;**

(2) **Plaintiff's Title VII Discrimination Claim fails as a matter of law because Plaintiff has not established that similarly situated employees were treated more favorably under nearly identical circumstances or that he suffered an adverse employment action, let alone that UT Health SA's legitimate, nondiscriminatory reason for terminating him was both false and pretext for unlawful discrimination;**

(3) **Plaintiff's Title VII Retaliation Claim fails as a matter of law because Plaintiff has not established that he engaged in protected activity under Title VII or that he suffered an adverse employment action;**

(4) **Plaintiff's Title IX Discrimination Claim fails as a matter of law because Plaintiff has not established that UT Health SA was deliberately indifferent to alleged sexual harassment;**

(5) **Plaintiff's Title IX Retaliation Claim fails as a matter of law because Plaintiff has not established that he engaged in a protected activity**

1

**under Title IX; and**

**(6) There is insufficient evidence as a matter of law to sustain a finding of front pay, back pay, or compensatory damages.**

## I.     STANDARD FOR JUDGMENT AS A MATTER OF LAW

The purpose of Rule 50(a) is to permit the court to remove cases from the jury's review "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000). Judgment as a matter of law is proper if the court finds no "'legally sufficient evidentiary basis to support the jury's verdict." *Equal Employment Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 682 (5th Cir. 2017) (citing Fed. R. Civ. P. 50(a)(1)). A plaintiff's evidence is legally insufficient both where he "presents no evidence, but also when there is not a sufficient 'conflict in substantial evidence to create a jury question.'" *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 382 (5th Cir. 1998) (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir.1997).

The court must not limit its review to only the evidence which supports the plaintiff's case, but rather, must review all of the evidence presented— "but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Mosley v. Excel Corp.*, 109 F.3d 1006, 1008–09 (5th Cir. 1997). In cases, as here, where the nonmovant is the plaintiff and has the burden of proof, the court need not engage in a burden-shifting analysis but may simply decide whether the plaintiff met her burden of proof. See *Equal Employment Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 682 (5th Cir. 2017) (court bypassed the *McDonnell Douglas* burden-shifting analysis in Title VII suit and considered whether the plaintiff offered

2

legally sufficient evidence to prove retaliation occurred).

## II.     ARGUMENTS AND AUTHORITIES

**A. Title VII preempts a private right of action for sex discrimination under Title IX.**

The Court had previously denied ruling on whether Plaintiff is an employee or student of UT Health SA at the pleadings stage. *See* Docket No. 67. The Court's Order stated as follows:

> [G]iven the nature of the fact-specific inquiry that would be required to determine whether Plaintiff is an employee or student of UT Health SA—the Court declines to dismiss Plaintiff's Title VII sex discrimination claim at the pleadings stage. This decision is without prejudice to UT Health SA raising the issue at summary judgment, at which time Plaintiff may pursue a claim for sex discrimination under either Title VII or Title IX, not both. *See Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997) ("[T]itle VII preempts a private right of action for employment discrimination under [T]itle IX.").

*See* Docket No. 67, pg 21.

Now that the Court has had the opportunity to hear both Plaintiff and Defendants' entire case-in-chief, UT Health SA is requesting the Court determine whether Plaintiff was an employee of UT Health SA as a matter of law. If Plaintiff *was* an employee of UT Health SA, Title VII would preempt a private right of action for sex discrimination under Title IX. *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997). If Plaintiff *was not* an employee, then he cannot bring a Title VII claim under the language of the statute.

**B. Plaintiff's Title VII Discrimination Claim fails as a matter of law because Plaintiff has not established that similarly situated employees were treated more favorably under nearly identical circumstances or that he suffered an adverse employment action;**

The elements for a Title VII discrimination claim are: 1) Plaintiff is a member

3

of a protected class; 2) Plaintiff was qualified for the position; 3) Plaintiff suffered an adverse *employment* action; and 4) "similarly situated employees were treated more favorably under nearly identical circumstances." *Nasti v. CIBA Specialty Chem. Corp.,* 492 F.3d 589, 593 (5th Cir. 2007).

Plaintiff failed to meet these elements. Among other examples, Plaintiff did not show that similarly situated employees were treated more favorably under nearly identical circumstances. The Fifth Circuit recently explained that meeting the "similarly situated" standard under Title VII "requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)). Further, "[t]his coworker, known as a comparator, must hold the 'same job' or hold the same responsibilities as the Title VII claim; must 'share[] the same supervisor or' have his 'employment status determined by the same person' as the Title VII claimant[.]" *Id.* (quoting Lee, 574 F.3d at 260).

Plaintiff did not identify one female coworker or coworker outside of his perceived sexual orientation that was treated more favorably under nearly identical circumstances. In fact, all of Plaintiff's fellow OMS residents that he testified about, aside from Dr. Hernandez, were also male. As such, Plaintiff's Title VII discrimination claim fails to meet this element. Further, Hernandez is not a similarly situated comparator as a matter of law because Plaintiff represented that she was a Chief Resident in the OMS program. UT Health SA disputed that she was. In either

4

scenario, Plaintiff never testified that Dr. Hernandez was treated more favorably than him within the OMS program. Plaintiff also provided no evidence that other residents were alleged to have engaged in the same history of conduct as him.

Additionally, UT Health SA offered evidence of legitimate, nondiscriminatory reasons for removing Plaintiff from the residency program. Plaintiff offered no evidence that these reasons were false, and that the real reason his residency was ended was due to illegal sex discrimination. UT Health SA provided numerous examples of legitimate, nondiscriminatory reasons for removing Plaintiff from the residency program, including: dishonest, unethical, and unprofessional behavior on behalf of Plaintiff; Plaintiff disappearing for hours at a time and lying about patient care; Plaintiff failing to complete the general surgery rotation; Plaintiff plagiarizing a presentation on blood disorders; Plaintiff nearly operating on a man who would have likely died due to bleeding out from the surgery; Plaintiff manipulating the dental implant surgery schedules; and countless other examples.

As mentioned above, we are requesting the Court determine as a matter of law whether Plaintiff was an employee of UT Health SA for the purposes of a Title VII discrimination claim. If he is not, he also failed to identify that he suffered an adverse *employment* action.

**C. Plaintiff's Title VII Retaliation Claim fails as a matter of law because Plaintiff has not established that he engaged in protected activity under Title VII or that he suffered an adverse employment action;**

The elements for a Title VII retaliation claim are: 1) Plaintiff participated in an activity protected by Title VII; 2) [h]is employer took an adverse employment

5

action against him; and 3) [a] causal connection exists between the protected activity and the adverse employment action. *Cooper v. Dallas Police Ass'n,* 278 F. App'x 318, 320 (5th Cir. 2008).

Plaintiff failed to meet these elements. Among other examples, Plaintiff did not show that he engaged in a protected activity under Title VII. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Comm. Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). When assessing whether the plaintiff participated in a protected activity under Title VII, "the relevant question is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable *concerns that the employer has acted or is acting in an unlawful discriminatory manner." O'Daniel v. Indus. Serv. Solutions*, 922 F.3d 299, 305–06 (5th Cir. 2019) (emphasis added).

Plaintiff testified that he was retaliated against for engaging in sexual harassment litigation against Brooklyn Hospital, his former residency placement in New York. Plaintiff provided no evidence that he engaged in an activity protected by Title VII relating to UT Health SA: he never made a complaint of discrimination or participated in a discrimination investigation at UT Health SA. In fact, Plaintiff's entire theory for this claim rests on the idea that he was dismissed for his lawsuit against *Brooklyn Hospital* where he previously was involved in their residency

6

program. As such, he did not satisfy the element that he engaged in a protected activity under Title VII. Plaintiff did not demonstrate that Dr. Perez, Dr. Ellis, the AEC, or anyone within UT Health SA's leadership were even aware of a sexual harassment lawsuit against Brooklyn Hospital.

Further, Plaintiff put forward no evidence of causation linking his purported protected activity against Brooklyn Hospital with any decision by UT Health SA. The trial evidence showed there were numerous legitimate, non-retaliatory reasons for its decisions regarding Plaintiff's dismissal from the residency program. Plaintiff offered no evidence that these reasons were false, and that the real reason his residency was ended was due to retaliation for his litigation against Brooklyn Hospital. UT Health SA provided numerous examples of legitimate, nondiscriminatory reasons for removing Plaintiff from the residency program, including: dishonest, unethical, and unprofessional behavior on behalf of Plaintiff; Plaintiff disappearing for hours at a time and lying about patient care; Plaintiff failing to complete the general surgery rotation; Plaintiff plagiarizing a presentation on blood disorders; Plaintiff nearly operating on a man who would have likely died due to bleeding out from the surgery; Plaintiff manipulating the dental implant surgery schedules; and countless other examples.

As mentioned above, we are requesting the Court determine as a matter of law whether Plaintiff was an employee of UT Health for the purposes of a Title VII discrimination claim. If he is not, he also failed to identify that he suffered an adverse *employment* action for purposes of a Title VII retaliation claim.

**D. Plaintiff's Title IX Discrimination Claim fails as a matter of law because Plaintiff has not established that UT Health SA was deliberately indifferent to alleged sexual harassment;**

The elements for a Title IX discrimination claim are that an educational institution 1) had "actual notice" of the alleged misconduct; but 2) was "deliberately indifferent" to it; which 3) resulted in the continued or further loss of educational opportunities to the plaintiff. *See generally Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 660 (W.D. Tex. 2017); *see also generally Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).

Plaintiff failed to meet these elements. Among other examples, Plaintiff did not demonstrate that UT Health SA was "deliberately indifferent" to any claim of sexual harassment or misconduct by Plaintiff. Deliberate indifference "is a 'high bar'—'neither negligence nor mere unreasonableness is enough.'" *Id.* at 356 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F. 3d 156, 165 (5th Cir. 2011)). In the Title IX context, the "deliberate indifference" standard comes from the framework provided by the Title IX administrative enforcement scheme of 20 U.S.C. § 1682, meaning liability is premised on "an official decision by the [educational institution] not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) (discussing deliberate indifference in the context of 42 U.S.C. § 1983).

Plaintiff did not provide any evidence that UT Health SA made an official decision not to remedy a Title IX violation. The testimony of Dr. Kaulfus made it clear

that no one, including Plaintiff himself, ever made a complaint, formal or informal, of a Title IX violation that Plaintiff allegedly experienced. UT Health SA cannot be deliberately indifferent to alleged sex-based conduct that it had no actual notice of— let alone liable for failing to address misconduct of which it had no notice. As such, Plaintiff failed to demonstrate that UT Health SA was ever in a position of failing to remedy to a Title IX violation.

### E. Plaintiff's Title IX Retaliation Claim fails as a matter of law because Plaintiff has not established that he engaged in a protected activity under Title IX.

The language of the anti-retaliation provision of Title IX and that of Title VII are similar and "should be accorded a similar interpretation." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 252 n. 18 (5th Cir. 1997) (citations omitted). *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 535 (N.D. Tex. 2023). The elements for a Title IX retaliation claim are that 1) Plaintiff engaged in an activity protected by Title IX; 2) Plaintiff suffered an adverse action; and 3) a causal connection existed between the employee's activity and the employer's adverse action. *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014); *see, e.g., Bonnewitz v. Baylor Univ., No. 621CV00491ADADTG, 2022 WL 2688399, at *2 (W.D. Tex. July 12, 2022) (applying the same elements to a Title IX retaliation claim).

Plaintiff failed to meet these elements. Among other examples, Plaintiff failed to demonstrate that he engaged in a protected activity under Title IX. To engage in protected activity under Title IX, an employee must "'step outside the role' [of representing the company] or otherwise make clear to the employer that the employee was taking a position adverse to the employer." *See Hagan v. Echostar Satellite,*

9

*L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008). Protected Title IX activity means "participation in complaints and investigations challenging alleged violations of Title IX." *See Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). In addition, the adverse position taken by the employee must be based on "'a reasonabl[e] belief that the employer was engaged in unlawful [Title IX] practices.'" *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

Plaintiff did not demonstrate that he engaged in any protected activity under Title IX, such as making a complaint of Title IX violations to UT Health SA or its Title IX office. The only example of protected activity under Title IX that he demonstrated was his sexual harassment litigation against *Brooklyn Hospital*, not UT Health SA. UT Health SA had no involvement in that litigation. As such, Plaintiff failed to meet this element.

**F. There is insufficient evidence to sustain a finding of front pay, back pay, or compensatory damages.**

As a matter of law, Plaintiff's front pay damages assume far too much about 1) whether he would have completed the program since he had already failed to complete the general surgery rotation; and 2) whether he would maintain consistent employment as a surgeon afterwards for decades even with a checkered employment history. Plaintiff is not, and never was, a fully licensed oral surgeon because he never finished the required residency program. Evidence demonstrated that it was impossible for Plaintiff to complete the OMS residency program because he was ineligible to continue in the general surgery rotation, a requirement for graduating

y

and continuing to progress through the program. As the evidence demonstrated, Sebastiani has maintained numerous jobs in the years following his dismissal as a dentist. Ultimately, Plaintiff's theory on front pay damages is far too speculative for an award of them to be appropriate.

An award of front pay is meant to compensate a plaintiff for wages and benefits she would have received from the defendant employer in the future if not for the Defendant's wrong actions. *See Palasota, supra*, 499 F.3d at 489–90; *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678, 684 (5th Cir.1975). The court in *Scott v. Amarillo Heart Group, LLP* calculated front pay damages as an equitable remedy of $49,000 based on the plaintiff's expected annualized earnings and plaintiff's ability to mitigate her damages by finding comparable employment. *Scott v. Amarillo Heart Grp., LLP*, No. 2:12-CV-112-J, 2013 WL 1497047, at *3 (N.D. Tex. Apr. 10, 2013), aff'd sub nom. *Scott v. Amarillo Heart Grp., L.L.P.*, 582 F. App'x 527 (5th Cir. 2014). "Of course, as the court cases recognize, this is a speculative endeavor that the Court must engage in, and it is impossible for anybody to know, for sure, exactly what and when that other comparable employment will become available." *Id.*

As to back pay damages, Plaintiff's own expert economist testified that he calculated zero back pay damages. Plaintiff provided no additional evidence of back pay damages.

Specific to Plaintiff's Title IX claim, UT Health SA is entitled to judgment as a matter of law that Plaintiff is not entitled to emotional, reputational, punitive, or dignitary damages. *Van Overdam v. Texas A&M Univ.,* No. 4:18-CV-02011, 2024 WL

115229, at *2 (S.D. Tex. Jan. 10, 2024). Nearly every Court to consider the matter has determined that a plaintiff can only recover damages traditionally available in contract law for Title IX claims. *Id.* at *2-3 (collecting cases). This excludes any recovery of emotion, reputation, or punitive damages. *Id* at *3 (citing *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 230, *reh'g denied*, 142 S. Ct. 2853 (2022)). As such, UT Health SA is entitled to judgment as a matter of law that plaintiff cannot recover any such damages related to his Title IX claim.

Finally, Plaintiff provided no evidence that he is entitled to any compensatory damages for mental anguish attached to any unlawful conduct by UT Health SA. As such, there is insufficient evidence to sustain a finding on front pay, back pay, or compensatory damages.

### III.    CONCLUSION AND PRAYER

There is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff's Title VII or Title IX discrimination and retaliation claims. Additionally, the claims under Title VII preempt the Title IX claims if the court determines that Plaintiff was an employee of UT Health SA. Finally, Plaintiff provided insufficient evidence to sustain a finding or front or pay back damages, and he cannot recover emotional, reputation, or punitive damages under Title IX. For these reasons, Defendant UT Health SA asks the court to grant Defendant's Motion for Judgment as a Matter of Law in favor of Defendant UT Health SA.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Anthony Dolcefino*
JOHN RAMSEY
Texas State Bar No. 24051227
john.ramsey@oag.texas.gov

ANTHONY DOLCEFINO
Texas State Bar No. 24134406
Anthony.Dolcefino@oag.texas.gov

EVAN W. WELTGE
Texas State Bar No. 24110523
Evan.Weltge@oag.texas.gov

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 019-1
Austin, Texas 78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 302-0667

**Counsel for Defendant**
*The University of Texas Health Science Center*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8th, 2024, I electronically filed the foregoing instrument with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

*/s/ Anthony Dolcefino*
ANTHONY DOLCEFINO
Assistant Attorney General